With that, we'll move on to the fourth case of the day, Jones against York, which is appeal number 21-1989. We'll be hearing from Ms. Goldman and then from Ms. Mills. Can you all see and hear me, all of us all right? Yes. Yes, Your Honor. Ms. Goldman, go ahead. May it please the Court, my name is Lisa Goldman and I represent the appellant, Brenda Jones. A citizen's constitutional rights are violated when police draft false police reports and hide exculpatory evidence to ensure wrongful conviction. The standard of review is de novo as this case was dismissed on summary judgment. This Court should reverse the District Court's summary judgment dismissal of Jones' constitutional claims and remand for trial for three reasons. First, York falsified his police reports, destroyed exculpatory evidence, and testified falsely to ensure Jones' conviction. Second, deciding York's intent and motive is not appropriate for summary judgment as those decisions rest on disputed issues of material fact. Third, Jones produced evidence that she suffered a constitutional injury, that Adams County maintained a policy or widespread custom of failing to supervise and or discipline employees who falsify, destroy, or withhold evidence, and that such policies were a cause of her constitutional injury. First, York falsified his police reports and testified falsely to ensure Jones' conviction in three major ways. First, he falsified his report of Jones' confession to ANOPA in Illinois and her cell phone records report when he knew Jones was never in Illinois based on her cell phone records. Second, he falsified his report of his March 21, 2013 interview with Jones when he admitted her complaints of ANOPA's violent extortion at the motel in Marshfield and reported the same to Officer Bornbach. Third, York testified falsely to corroborate his false reports and increase the likelihood of Jones' conviction. York's report about Jones confessing to ANOPA in Illinois was a false report, and his report about Jones' cell phone records was false. York knew Jones did not confess to ANOPA in Illinois because he knew her cell phone records showed she never left Wisconsin. Do we have evidence? I know you've explained how the switch column in those records shows that. Do we have evidence that York drew that inference, that he understood that from the records? We know from the declaration that I filed in response to the summary judgment from Mr. Dignanis, who was the state's expert at trial from U.S. Cellular, that he had discussions with York prior to trial and prior to a charging decision that the switch data showed the phone never left Wisconsin. Yet, Mr. York never provided that information to the prosecutor or to defense counsel. So that was a key piece of evidence because the main evidence against Ms. Jones for arson was this alleged confession that occurred in Arlington Heights, Illinois, a suburb of Chicago. So York knew Jones did not confess to ANOPA in Illinois because he knew her cell phone records showed she never left Wisconsin. Therefore, his report asserting Jones confessed to ANOPA in a motel room in Illinois was a false report, and his report about Jones' cell phone records was also a false report because he excluded the exculpatory information that the cell phone records showed she never left Wisconsin. York knew Jones' records showed she never left Wisconsin, and the state's expert, Mr. Dignanis, told him that is what they showed. York either falsified the original report on the cell phone record by omitting the exculpatory evidence, or he suppressed the exculpatory evidence by not revealing it to Jones for her use at trial. And what's interesting is York seems to dispute this in his appellate brief when he knew this information, but most importantly, he conceded in his appellate brief that he knew this information. So regardless of when he knew it, he violated Jones' constitutional rights because he secreted this proprietary information from the defense. He asserts in his brief that Jones could have asked Dignanis a question at trial about this information, but that's incorrect for two reasons. First, Jones' counsel would not have any reason to expect Dignanis to know this information because Dignanis testified that he was only responsible for Adams and Juneau counties, which are the counties located halfway between Madison, Wisconsin, and Minneapolis, Minnesota. And we're talking about switch data that would be close enough to Arlington Heights, Illinois, to record in Wisconsin. So second, the statute required York to tell Jones' counsel of all the opinions of an expert under 973.23 sub 1 sub e because it requires the disclosure of any statements of experts made in connection with the case. So once York knew this information, his Brady obligations were triggered, and it's really no different than the Boss case. In the Boss case, the court stated that it was unreasonable to assume a reasonably diligent defense attorney could find information that was expected that the witness would possess. But here, Dignanis testified, his testimony is in the trial transcript, R36-1, pages 249 to 250, that he was only responsible for those two counties. And so it would be unreasonable for the defense attorney even to ask at trial, well, do the phone records show that she couldn't have been in Illinois because there's no evidence from his testimony at trial that he would even know that information since he was only assigned to Adams and Juneau County, which are northwest of Madison, which means they're extremely further northwest of Chicago. So the U.S. Supreme Court and this court have also stated repeatedly that a prosecutor, and by connection of a police officer, is not, you know, they're not a gladiator seeking victory, but they're supposed to seek justice. So York's failure to either correct his previously incorrect reports or to refrain from drafting false reports violated Jones's constitutional rights, and therefore this court should reverse the district court's decision on summary judgment because there are material facts in dispute on that issue. And for purposes of summary judgment, York destroyed exculpatory evidence. He testified at the preliminary hearing in the underlying criminal case that he used the recording he made in his vehicle between Jones and Inopah, the recording that I refer to as the extortion recording, to write his police report. He later testified that he thought he recorded the call with at least two recorders, yet he failed to turn over the recording. It's a disputed issue of fact whether he destroyed or secreted the recording from the defense since he conceded under oath at the preliminary hearing that he recorded the call and used it to write his report. Issue preclusion doesn't apply to this because the matter was not fully adjudicated because Jones won her post-conviction motion and did not waive her right to direct appeal of the trial court's decision at the suppression hearing. The conviction was reversed, therefore there's no definitiveness, and the hearing was inadequate because Jones's trial counsel was ineffective. Under the AMCAS decision, 45F, third 155, page 160, this court stated that definitiveness is missing when a party is not exhausted her appellate remedies. In Wisconsin, a defendant in a criminal case must first file a post-conviction motion before filing a notice of appeal to appeal any decisions that were previously made in the trial court. And so the decision as to whether it was exculpatory evidence or not was previously made in the suppression hearing in the trial court and wasn't right for review with the post-conviction motion. It was only right for review and a direct appeal. But because Jones won and her conviction was reversed during the post-conviction motion phase, it was never right to appeal the exculpatory nature of the decision in the suppression hearing. May I also ask you there, would the doctrine of merger help you on issue preclusion? In other words, the motion to dismiss ruling merged into the final judgment, which was then vacated. Correct. That's correct. And I was just going to express that under the AMCAS decision, when you look at collateral estoppel or issue preclusion, the court looks to whether one, they've exhausted her appellate remedies, which she hadn't, and whether a decision is final for issue preclusion turns on factors such as the nature of the decision. And when the conviction was reversed, she was no longer, none of those prior decisions applied because the conviction was reversed. And the court also noticed that you look at the adequacy of the hearing and the opportunity for review. Obviously, there's no opportunity for review if the post-conviction motion is successful. And the adequacy of the underlying hearing was challenged and mentioned in our district court briefs and appellate briefs because it was argued by post-conviction motion counsel that the underlying trial court counsel was ineffective. So, second, intent and motive are rarely appropriate for summary judgment. As a general rule, a party's state of mind, such as knowledge or intent, is a question of fact for the fact finder to be determined after trial. York asserts he was sloppy, mistaken, or inadvertent, but this argument falls flat because it's a question of fact for a jury to decide if York is being truthful about being sloppy, mistaken, or whether York is lying. And he intended, and he had a motive, to fabricate his reports to ensure a charging decision would issue against Ms. Jones, and then propagated those false reports by testifying falsely yet consistently with the reports to ensure. Let me ask you a question about the fabricated evidence. For that kind of claim, does Ms. Jones need to show that the fabricated evidence caused the violation to her constitutional rights? Or is it rather that once a plaintiff shows that fabricated evidence was used at trial, that necessarily causes a constitutional violation because the Supreme Court has said that fabricated false evidence never, never helps a jury or a fact finder in its truth-seeking function. Which road are you going down here? Well, Your Honor, for purposes of Ms. Jones' claim, it's not disputed that the cell phone data shows she wasn't in Arlington Heights, Illinois, and that York's report asserts that she was in Arlington Heights, Illinois, making a confession to ANOPA. So I don't want to commit to one lane or the other, because in this particular case, you can decide it on the simple fact that the reports are false, because the evidence is undisputed that she was never in Arlington Heights, Illinois, based on the cell phone records. And it's undisputed that York testified that he had used the recording to write his report and then did not produce the recording. So all of the evidence that Jones relies upon to request that summary judgment be reversed is technically undisputed. Even in the proposed findings of fact, York conceded all the facts necessary to show these particular factual disputes. Does that answer your question, Judge Jackson? Thank you. So third, Jones provided ample proof to survive summary judgment on her Monell claim. The court didn't really decide the Monell claim on its face. The court decided that when it dismissed the constitutional claims, it would dismiss the Monell claims because she had no constitutional claims. So Jones would request that this court reverse the district court's decision on the Monell claim and allow that to proceed to trial as well. Ms. Jones did provide ample proof to survive summary judgment. Adams County maintained a policy or widespread custom of failing to supervise or discipline employees. And in conclusion, Brenda Jones is entitled to enforce the constitutional violations perpetuated by York and allowed by Adams County. York doubled down on his lies and cost Jones years of her life. And Ms. Jones urges this court to reverse the district court's summary judgment decision and remand this case for trial on each of her claims because there are... Can I just ask you a couple of quick questions? Sure. I reserve two minutes, but I see that... Well, I've been holding off on asking questions here for you.  So she was sentenced to nine months as a condition of probation and the sentence was delayed for some time. She ultimately went to jail and then the sentence was stayed. I don't recall the exact number of days, weeks or months that she spent incarcerated. Less than nine, but we don't know. Correct. But she did spend time incarcerated until... To stay the sentence pending the appeal and the court denied that motion. And then I believe it was outside the record. There was some kind of stipulation between her and the prosecutor at some point, but she had already started her sentence. Okay. As I understand, we've got two separate tapes that we're having debates about. The one that existed that was played at trial of ANOPA and someone, maybe Jones talking, but supposedly confessing. And then we've got the missing tape where York was present for the tape, right? Correct. And I frankly agree with you on the issue of issue preclusion. But my question is, how much does that help you? How different in an exculpatory way were the versions of that phone call testified to by plaintiff and defendant York? So the interesting thing is that in my view, the differences are quite strong. Ms. Jones asserts that ANOPA was extorting her, meaning he was asking for money or he would frame her for burning down her house. What York says testified at trial is that he was asking Ms. Jones for money for his property that was destroyed in the fire. Did York acknowledge at trial that ANOPA was asking, was in essence offering to provide the tape of the supposed confession in return for that money? No, I don't think he was because at some point he asserts that ANOPA says he was never going to give her that tape. And so that's the crux of the problem is that York is asserting that the confession tape is valid and that Brenda Jones' conversation with ANOPA about this tape is a valid conversation as though the tape exists. Ms. Jones is asserting that the tape is a forgery. She was never in Arlington Heights, Illinois, confessing to arson. And she says that ANOPA was demanding she pay him money or he was going to frame her for burning down her house. So that's a huge difference for purposes of culpability in a criminal case. Okay, thank you. You'll have an opportunity for rebuttal. Ms. Mills for the defense. May it please the court. My name is Sarah Mills and I represent Adams County and Brent York in this matter. This court should affirm the district court's decision holding that no violation occurred of Ms. Jones' constitutional rights during any stage of Investigator York's participation, whether it was the investigation, the referral to the district attorney's office, or during trial. It's crucial that the record be combed for the details in this case because Ms. Jones continually makes statements that are simply not accurate. For instance, she points out that Investigator York testified that he used his recording to write his report and therefore he must be lying. It's important to note that there were, we've got three tapes really that we're talking about. Investigator York recorded his first hour of conversation with Ms. Jones. That's what you see reflected in his police report. You can compare that recording, which is in the record at record 45-6, with every single thing he wrote in his report and there is total corroboration between the two. The recording that was lost was the second half of that meeting where he asked her to call Mr. Anopa and he would record it. That's the one that when he switched recorders, either it didn't record or it was lost. Throughout this case, Ms. Jones has repeatedly piled inference upon inference and claims that it creates an issue of fact where none exists. There is no evidence in the record whatsoever of, for example, fabrication. Fabrication is treated differently than falsification or withholding, but she continually uses the word fabrication. There is no evidence of fabrication whatsoever. She misstates things like Mr. Durginous' affidavit in the record that proves that Investigator York understood what the cell phone data meant. One, Mr. Durginous' declaration would have no foundational bearing on whether Investigator York understood what that data meant. Can he testify that he explained something to York? Sure, but that affidavit does not state when it was explained or what kind of information they discussed in any detail. Instead, the record reflects that Investigator York was concerned with the date of the fire. Because Ms. Jones told him she was in one location, 45 to 55 minutes away from her home when the fire started, when in fact her cell phone records showed no, she was at the location of her home when the fire started. Throughout the entire investigation, all of the records from that show that's what he was focused on. Absolutely no evidence was withheld in this matter whatsoever. Although Ms. Jones continually claims that this cell phone data was proprietary, there is no basis to make that claim whatsoever. This is not in any way like the Boss case. Mr. Durginous is a U.S. cellular engineer who was brought in to testify about U.S. cellular records. Ms. Jones claims how would he have possibly known what these records meant? He was never asked, so there's no way to know. To say that he was only assigned to certain counties doesn't mean he doesn't know how to read U.S. cellular phone records. So it's important to keep in mind, we're not talking about fabrication. There is zero evidence of fabrication whatsoever. She has conceded that the original allegedly withheld Brady evidence was in fact available to her. All of that evidence was made available to her or was available to her through reasonable diligence of her criminal defense attorney. So she has continually pivoted throughout this case to try to find new avenues to attack. For instance, by saying that there was fabrication. How was the March 2013 recording? I guess Ms. Goldman calls it the extortion recording. How was that available to her? The extortion recording is the recording that Mr. Anopa made of Ms. Jones. That was introduced at trial. The lost recording was a recording of Ms. Jones speaking to Mr. Anopa while Investigator York recorded it. How was that available to her? They did not discuss anything about who did what. It was simply him saying I want money for this tape. Now to be clear, Investigator York testified over and over at trial. Yes, he was trying to extort her. He never denied it in any way, shape, or form. To claim that somehow this lost recording went to who actually committed the crime, both Ms. Jones and Investigator York confirmed when they testified at the pre-trial hearing. That's not what was discussed. Can we slow down a bit? Let me just understand. The prosecution relied on not physical evidence or forensic evidence, but on Anopa's testimony in trying Ms. Jones for arson, right? That was one of the things that they relied on, yes. The cell phone records showing that she was at her home when the fire started, contrary to her statements, is another thing they relied on. So those two things? Those are two of the main things, yes. Okay, now the lost recording. The lost recording contains Anopa asking Jones for money. Again, you agree with that, right? Yes, and Investigator York agrees with that and testified to that at trial. No one denies that. Would it not be a reasonable conclusion that information like that would have helped Ms. Jones impeach Anopa's testimony? I think on a theoretical level, but no one was denying it. Both Investigator York and Ms. Jones testified at trial that that is exactly what happened during that phone call. It's not as if Investigator York was saying, no, he wasn't really doing that, or Ms. Jones must be mistaken. He said at the trial, yes, he was trying to get money from her. I have no reason to doubt that he was trying to extort her. And I guess the extortion issue is really the crux of everything in terms of causation. This recording of Mr. Anopa that he made of Ms. Jones, that was made for an extortionate purpose. Every single person agreed to it. It was discussed over and over prior to trial and even during trial. But Ms. Jones's criminal defense attorney never objected to its admissibility, and it should have been inadmissible. And that's what the focus was on during all of the post-conviction motions. That's what the trial court was focused on, and that's what the district court in this case noticed as well, that the focus for causation purposes, there's no way that Ms. Jones in this case could say that the fact that Investigator York forgot one detail in an otherwise entirely accurate report caused her ultimate conviction. What really most likely caused her conviction was her defense attorney's failure to object to the admissibility of this recording Mr. Anopa made to try to extort her. That everyone agrees from day one all the way through the post-conviction motions should never have come into evidence. Ms. Mills, is the fact that the criminal case was ultimately dismissed, is that why this information is not available on CCAP as to what happened in the prosecution and the trial, etc.? I wish I knew how CCAP is being operated. Halfway through this case, it was available up through like 2020, and then it disappeared. I called the clerk's office. She said, geez, I don't know why that isn't there anymore. I think there's been a switch in how CCAP is being operated because I've seen it with other cases, but I don't have any other insight. Thank you. Was there any other questions? I guess could you why very often the difference between I don't remember and I choose not to remember would be treated as an issue of fact. With the respect to the discrepancies between York's and Jones's versions of their interview and the phone call. So I guess to be clear, there is no discrepancy. When you review the, there's a transcript in the record of the hearing on February 4th, I believe it was, of 2016, where they both testified about what was on that recording. As the judge noted, they both testified consistently about what was discussed during that phone call that Sheriff York reported. There was no big split between the two that would have suggested that one of them had a completely different take on what had transpired. Was there a difference between York's testimony at that hearing and his testimony of trial about that conversation? No, he consistently said, and I see Ms. Goldman's nodding, but no, there was no difference. During that underlying or the pre-trial hearing, he said he was trying to get money from her. During trial, he said he was trying to get money from her. To me, at least, there may be a difference between trying to get money from her for property destroyed in the fire and trying to get money for her in return for the supposedly incriminating audio tape would be very different. What he testified to at trial over and over was that he believed that Mr. Anoppa was trying to extort. He used the word extort. So I don't know the specific phrasing off the top of my head, but he said, I have no reason to believe that Mr. Anoppa was not trying to extort Ms. Jones. So in, I think, a plain reading of the evidentiary statutes, that would make that inadmissible, that recording. The only, I'd say the one single difference in this entire case that has been used to claim falsification, fabrication, all of these other things is that Investigator York said he did not recall Ms. Jones telling him that Mr. Anoppa put his hands on her neck. He said, I'm sorry, I just don't recall that. I remember there being some kind of domestic situation, which he stated does not necessarily mean that there's violence. I just didn't recall that specific statement being made. That has been his testimony from day one all the way through to when his deposition was taken at this trial. I'm sorry, I just don't recall. Now, crucially, his conversation with Ms. Jones when she told him that is in the record at 45-6 and was given to Ms. Jones. That was all produced prior to trial. She could have refreshed his recollection with it. She didn't. Can I ask you to address this issue of preclusion, given that the conviction was set aside, this never reached the Wisconsin Court of Appeals, and we'd have a big problem in our habeas jurisprudence if issues decided along the way toward vacated convictions, and also in our 1983 jurisprudence, if issues decided along the way toward vacated convictions were deemed precluded? Well, first, I think that this is a perfect example of a situation where there was a full and complete exposition of the facts. At the trial court, correct. Everyone had their say. The plaintiff's point with the flipped lineup here is that there was never a final resolution of that because there was never a reason or opportunity to appeal it. I think that if that is the case and she felt that it was relevant or important to appeal it in her criminal conviction, that's one thing. But to use a court of competent jurisdiction looking at this issue and deciding the lack of any exculpatory nature because everyone agrees what was said, that should not... Whether the trial court was correct on the merits is a different question. Whether she's entitled to have somebody take a fresh look at it is a legal issue where it seems to me the grounds for issue preclusion just are not satisfied here. Thank you. I would just point out that even if the court were to decide that issue preclusion should not apply, she still did not meet her burden in any way. In responding to summary judgment, she cannot establish causation without continually referring to just speculation and inference and inference. I would just ask that the court... I know the record is extremely long and detailed, but take a look at what is in the record because the constant references to fabrication and to falsification and to things being withheld are patently false. None of that happened. The recording exists that can be compared line by line with police reports. There's zero evidence of fabrication. And the fact, even if Investigator York was false in any of his testimony at trial, that is absolute immunity. Thank you. Thank you. I think we have that. And then two minutes, Ms. Goldman, for rebuttal. Yes, thank you, Your Honor. So I want to address three issues. One is the issue of whether York testified as to what the nature of the lost or destroyed recording shows. And in the appellate record on A, I believe it's page 124, York testifies that it's 36-1, page 124, 262, which I believe is also in the trial transcript in the appendix. He specifically testifies, so at any point during that conversation, was there any offer of money of some sort or anything in order to get that recording? He says, yes. Alan asked Brenda how much money she had in the bank. Brenda answered $3,000 to $4,000. Alan replied by saying to give him $3,500 if that was what he thought he had value in the garage that he had lost in his personal belongings. That was his testimony at trial. That was for the recording? In return for the recording? Yes. That's the lost, the destroyed recording, the exculpatory evidence that I'm arguing he lost. Okay. Sorry. That in that conversation, he was saying, give me $3,500 and I'll give you the recording back, correct? Correct, because that's the value of the property I lost in the garage. And that's the way York described it at trial. At trial, York didn't even describe it as $3,500 for the recording. He described it as $3,500 for the personal property he lost in the fire. Then the next point is that in the appendix, page 33 of the preliminary hearing testimony, my proposed findings of paragraph 26, I made reference to a proposed fact at the preliminary hearing testimony that he used the call to write his report, and the defendants conceded that in the proposed findings of fact at the district level. That's paragraph 26, and I believe it's on page 33. Next. I'm very pleased, Lee, what was your third point? The third point was that the proprietary cell phone data was proprietary, and Ms. Marchanti, the state expert who created the maps, testified to that on page 235 of day one of the trial transcript. And Mr. Diggerness testified to that in R36-1, pages 249 to 250, that he's the person that's in charge of creating that information, and that it is proprietary. Okay. Thank you all very much. Our thanks to both counsels. The case will be taken under advisement.